IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES CALHOUN-EL, # 160-083 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-12-2383 |
| CORIZON MEDICAL SERVICES, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff James Calhoun-El ("Calhoun-El"), an inmate at North Branch Correctional Institution "NBCI"), brings this action under 42 U.S.C. § 1983. Counsel for Defendants Ava Joubert, MD, William Beeman, RN, Rhonda Skidmore, Dianna Harvey, LPN and Corizon, Inc. ("Defendants")[1] have filed a Motion to Dismiss or for Summary Judgment with exhibits. (ECF No. 23).[2] Calhoun-El has filed an opposition with exhibits (ECF No. 41) to which Defendants have replied. (ECF No. 42). The matter is ripe for disposition. After careful consideration of the pleadings, exhibits, and applicable law, this Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), as a hearing is deemed unnecessary. For reasons to follow, Defendants' Motion, treated as one for summary judgment, is GRANTED.

---

[1] Service was not obtained on Barbara Newlon, Regional Agent. Calhoun-El does not identify Ms. Newlon's role in his treatment. There are no facts presented to suggest she acted with "deliberate indifference" to Calhoun-El's "serious medical needs" in violation of his constitutional rights. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[2] Plaintiff was informed of his right to file a response to Defendants' dispositive pleading and submit affidavits, declarations, and other documentary evidence. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

## BACKGROUND

Calhoun-El presents the following claims: 1) his medical order for single cell assignment was discontinued by Defendants (ECF No. 1, ¶¶ 10-11) and he was placed by unspecified persons in an isolation cell for eight days without proper hygiene items; 2) William Beeman ("Beeman") denied him use of a fan; 3) he was denied use of a cane; 4) he is not receiving treatment for Hepatitis C; and 5) he has been deprived of pain medication since July 7, 2012. (ECF No. 1). As relief, he seeks a declaration that Defendants violated his constitutional rights and award of compensatory and punitive damages, attorney's fees, costs and other relief. *See id.*

## DEFENDANTS' EXHIBITS

In support of their dispositive pleading, Defendants have filed verified exhibits, including Calhoun-El's medical records and declarations of medical providers.

### 1. CELL ASSIGNMENT

Calhoun-El asserts that on July 22, 2011, Dr. Ottey ordered single cell housing for him, but Defendants later discontinued the assignment. (ECF No. 1, ¶¶ 10-11). Calhoun-El claims he was then placed in an isolation cell for eight days without hygiene items. *See id.*

On February 21, 2012, Dr. Joubert discontinued Calhoun-El's medical order for a single cell assignment. (ECF No. 42, Exhibit 1, at 2-4). William Beeman ("Beeman"), Nurse Manager, attests that after a "plan of care conference," it was determined that single cell placement was not necessary to manage Calhoun-El's Hepatitis C. (ECF No. 21, Exhibit 1 (Affidavit of William Beeman, R.N.)). Beeman explains that some inmates may be single celled to avoid the spread of communicable diseases. (ECF No. 23, Exhibit 1). In Calhoun-El's case, however, single cell status was not ordered to manage or treat his condition. *See id.*

Calhoun-El became belligerent when corrections staff ordered him to move to a double inmate cell, and was consequently placed in a segregation cell.[3] Beeman states Defendants are not responsible for the restrictions or hygiene supplies provided to inmates in segregation housing. *See id.*

## 2. FAN

Calhoun-El's next complaint is that Defendants discontinued his medical order for a fan. He claims high temperatures and lack of a fan caused him to suffer fever, a severe nosebleed, and chest pain.

In his declaration, William Beeman, R.N. attests Calhoun-El had no medical need for a fan and "there has been no significant effect on his chronic or other medical conditions from not having a fan." *See id.* Beeman notes a fan is considered a privilege because it may pose certain institutional security implications. *See id.* Beeman further states rhere is no indication in Calhoun-El's medical records that Defendants discontinued his use of a fan, thereby suggesting the use of a fan may have posed a security issue in segregation housing.

Calhoun-El's medical record dated June 9, 3012, indicates he reported suffering nosebleeds "for years." (ECF No. 42, Exhibit 2 at 5). That record also demonstrates Calhoun-El's nosebleed on that date lasted only several minutes and at the time he was seen in the medical unit there was no active bleeding. *See id.* Calhoun-El did not report the nosebleed was due to lack of a fan or the temperature in his cell. On July 22, 2012, he was again seen by medical providers for a nosebleed and reported his belief that he was experiencing frequent nosebleeds due to the temperature in his cell. *See id.* at 6.

---

[3] On February 24, 2012, Calhoun-El refused a direct order to move to a double cell because his single cell placement had originally been issued to continue through September of 2012. (ECF No. 41, Exhibit 2 at 9, Notice of Inmate Rule Violation).

3

### 3. CANE

Calhoun-El claims his back and ankle were injured in April of 2012 due to a lack of a cane when he tried to get in and out of a van to attend court. He also claims he was to receive back surgery, but due to his lack of a cane, the surgery was denied. [4]

Beeman attests that Calhoun-El's medical records show that he walked to some of his medical appointments at the prison without a cane. At other times, however, he complained that he needed a cane. (ECF No. 21, Exhibit 1 at 3-4). On March 20, 2012, Dr. Ottey discontinued the order permitting Cahoun-El to have a cane after determining it was no longer medically indicated. There is no indication that back surgery was denied or that he fell because he was without a cane. On May 9, 2012, a medical order was issued permitting Calhoun-El to use a cane for one year. *See id.*

### 4. HEPATITIS C TREATMENT

#### A. DECLARATION OF WILLIAM BEEMAN

On October 20, 2011, Calhoun-El met with Harvey and Dr. Rufeal, an infectious disease specialist. (ECF No. 42, Exhibit 4). It was determined that Calhoun-El had too many comorbidities and medical concerns to be a candidate for antiviral therapy. [5] Calhoun-El continued to be regularly monitored and treated in the chronic care unit. Calhoun-El was scheduled for a medical appointment after the meeting, but refused to be seen on October 26, 2011, by Greg Flury, a physician's assistant. He also refused to have his blood drawn for lab

---

[4] Calhoun-El provides no evidence that he was scheduled for back surgery or back surgery was denied for lack of a cane.

[5] Calhoun-El's medical records indicate that he suffers from diabetes and hypertension in addition to Hepatitis C. (ECF No. 42, Exhibit 4). He is also treated for chronic back pain. (ECF No. 21, Exhibit 3).

tests on March 28, 2012 (ECF No. 42, Exhibit 4). Furthermore, Calhoun-El did not appear for psychiatric evaluations, a precondition for Hepatitis C antiviral therapy.[6] Additionally, Calhoun-El was never approved for anti-viral therapy by the requisite panel which includes the state medical director, the director of nurses, a hepatitis specialist, and an infectious disease doctor. According to Beeman, neither he nor the other Defendants are authorized to make final decisions as to whether Calhoun-El will receive antiviral therapy. (ECF No. 23, Exhibit 1).

### B. DECLARATION OF REBECCA LEATHERMAN, R.N.

Defendants have also submitted the declaration of Rebecca Leatherman, R.N., infection control coordinator at NBCI. (ECF No. 23, Exhibit 2). She attests that in February of 2011, Calhoun-El started the Hepatitis C evaluation process. Calhoun-El showed no symptoms of liver disease and his liver functions were normal. His case was presented to specialists in March of 2011, then to the "HCV" panel for consideration for starting antiviral therapy in April of 2011. *See id.* At that time, medical providers were instructed to "hold him" because he was having kidney function issues and Calhoun-El was referred back for treatment of those kidney issues. *See id.* Additionally, Calhoun-El's chronic pain and depression are contraindications for antiviral treatment because [a]ntiviral treatment is physically taxing and can exacerbate mental issues." *See id.*

In August and October of 2011, Calhoun-El's case was again presented to the HCV panel and the infectious disease specialist. This time, they recommended against antiviral treatment in light of his comorbidities and refusal of treatments. Calhoun-El was referred for continued treatment in the chronic care clinic.

---

[6] Antiviral treatment can be physically taxing and aggravate mental health conditions.. (ECF No. 23, Exhibit B at 2).

5

In December of 2011, Calhoun-El was reevaluated and his comorbidities determined sufficiently under control. Evaluating psychiatry providers also recommended commencing treatment. In January of 2012, Calhoun-El refused necessary lab tests to begin treatment.

Calhoun-El did not appear for his appointment with psychiatry practitioners on February 15, 2012. "He was put on a six month hold at this time." *See id.* In August of 2012, he missed another psychiatry evaluation, stating that the medical department had taken away his cane. Leatherman notes that "the office of the nurse to whom he complained, Nurse Harvey, is approximately 15-20 steps away from psychiatry, so it is unknown why he could not attend this appointment." *See id.* Calhoun-El was scheduled to be seen by an infectious disease specialist on Thursday, October 25, 2012, but did not appear for the appointment. *See id.*

Calhoun-El has filed an affidavit stating he has never been treated for kidney issues, never refused treatment for Hepatitis C, and never failed to appear at any medical appointments. (ECF No. 41, ¶¶ 18 and 19.). He attests the the denial of a fan "interfered with a medical order." *Id.* at ¶ 14.

### 5. PAIN TREATMENT

Calhoun-El posits "there is a genuine dispute of whether Neurontin is a pain medication." (ECF No. 1 at 10). He questions whether Neurontin is a non-formulary medication. *See Id.* Calhoun-El's medical records demonstrate that he has been treated for back pain with Neurontin, Tylenol, Flexeril, and aspirin and has received electromyography ("EMG") and nerve conduction studies at Bon Secours Hospital for his reports of pain. (ECF No. 41 at 16, 19 and 27). The medical staff has continued Calhoun-El on Neurontin (generic name Gabapentin) for nerve pain, and Acetaminophen for pain, since May of 2012. ( ECF No. 23, Ex. 1).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motions and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court also has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993). When a motion for summary judgment is properly made and supported, the nonmoving party must set out specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the evidence presented by the nonmoving party is merely colorable, or is not significantly

probative, summary judgment must be granted. *See Anderson*, 477 U.S. at 249–50. A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citations omitted). Mindful that Calhoun-El is proceeding pro se, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (pleadings filed by a *pro se* litigant are held "to less stringent standards than formal pleadings drafted by lawyers).

## DISCUSSION

### A. DEFENDANT CORIZON, INC.

This Court takes notice that Corizon, Inc. is a private corporation that has contracted with the State of Maryland to provide medical services to inmates at certain state institutions. Corizon administers medical care only through its agents and employees. Insofar as Calhoun-El seems to hold the Defendant corporation liable under the doctrine of respondeat superior,[7] the principle is generally inapplicable in § 1983 actions. *See Vinnedge v. Gibbs*, 550 F.2d 926, 927–99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978).

### B. DEFENDANTS JOUBERT, SKIDMORE, AND HARVEY

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

---

[7] Respondeat superior is a legal doctrine whereby an employer may be held responsible for its employees.

8

Deliberate indifference to a serious medical need requires proof that, objectively, the inmate was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk a defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001) (citation omitted). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Under the facts alleged, Calhoun-El fails to show Defendants acted with requisite deliberate indifference to his serious medical needs. His medical records evidence continuous and ongoing medical treatment for Hepatitis C. He has been continuously evaluated and monitored for his other medical and psychiatric conditions with a view toward whether antiviral therapy may be appropriate in his case. Calhoun-El's failure to comply with medical procedures regarding lab tests and psychiatric evaluations has hindered commencement of therapy.

Further, Cahoun-El's disagreement with medical providers as to whether a cane, fan, or single-inmate cell were medically necessary does not amount to a claim of constitutional dimension. Similarly, Calhoun-El's dispute over his treatment for pain does not state a constitutional claim, as an inmate's disagreement with medical practitioners over the course of his treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). Mere "[q]uestions of medical judgment are not subject to judicial review." *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir. 1975); *see also Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

Calhoun-El is certainly entitled to medical treatment for his medical conditions. Even when the facts are viewed in the light most favorable to Calhoun-El, however, there is no genuine issue of material fact in dispute as to whether Defendants actions showed requisite deliberate indifference to Calhoun-El's serious medical needs. The evidence is that the Calhoun-El's medical complaints have been considered, investigated and treated. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983

claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). There are no exceptional circumstances presented in this case.[8]

Lastly, it bears noting that Defendants are medical providers or medical administrators. They do not make institutional security or disciplinary decisions concerning an inmate's placement in segregation housing.

## CONCLUSION

For the foregoing reasons, this Court finds that even when the facts are viewed in the light most favorable to Calhoun-El, there are no specific facts showing that there is a genuine issue for trial. Accordingly, Defendants' Motion for Summary Judgment will be granted and summary judgment will be entered in favor of Defendants by separate Order.

June 24, 2013
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[8] Calhoun-El's second and third Motions for injunctive relief (ECF Nos. 44 and 46) fail to satisfy the standard for preliminary injunctive relief set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) and *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S._, 130 S. Ct. 2371 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Consequently, they will be denied.